**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| TIMATHY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-1010 |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is now before the Court on Plaintiff Timathy Jones's ("Plaintiff") Motion for

Summary Judgment (ECF No. 11) and Defendant Acting Commissioner of Social Security Nancy

A. Berryhill's ("the Commissioner") Motion for Summary Affirmance (ECF No. 15). For the

reasons stated herein, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's

Motion for Summary Affirmance is DENIED. This matter is now terminated.

## JURISDICTION

Plaintiff seeks judicial review of a final decision of the Commissioner which found he was

not entitled to Period of Disability and Disability Insurance Benefits based upon disability. This

Court has jurisdiction over this action pursuant to 42 U.S.C § 405(g).

## PROCEDURAL AND FACTUAL BACKGROUND[1]

On December 29, 2012, Plaintiff filed his applications for Period of Disability and

Disability Insurance Benefits, alleging a disabling condition with the onset date of February 8,

2008. This date was later amended to May 21, 2009. His claim was denied initially on April 4,

---

[1] Facts included are cited from the Plaintiff's Motion for Summary Judgment unless otherwise indicated. (ECF No. 11).

2013, and upon reconsideration on September 27, 2013.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).  On October 23, 2014, ALJ David Bruce held a video hearing.

On May 12, 2015, the ALJ issued a decision unfavorable to Plaintiff, finding he was not disabled under sections 216(i) and 223(d) of the Social Security Act. On November 7, 2015, the Appeals Council denied Plaintiff's request to review the ALJ's decision.   On January 10, 2017, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g), arguing: (1) the ALJ's analysis of Plaintiff's subjective symptoms was legally insufficient and was not supported by substantial evidence; and (2) the ALJ erred in finding no medically determinable mental impairment and failing to order a psychological consultative examination or have the case reviewed by a state agency psychological consultant; (3) the ALJ's analysis of the medical opinion evidence was legally insufficient and the weight decisions were not supported by substantial evidence and (4) the ALJ's residual functional capacity assessment was not supported by substantial evidence.

Plaintiff was born July 20, 1965, and was 42 years old on the alleged onset date.  (R. at 68).  He lives with his wife in government subsidized housing.  Plaintiff was initially injured at work on February 8, 2008. The next day he visited the emergency room because of sharp pains in his lower back and shooting down his left leg.  He was diagnosed with lumbar myofascial strain and given a prescription for pain medicine and muscle relaxers.  Before the ALJ, Plaintiff's counsel stated that Plaintiff was awarded "some amount" regarding that incident on May 21, 2009.

The last time Plaintiff was employed was June 30, 2008, at Harden Industries, where he served as an assembler and fabricator.  His allegations include back injuries, carpel tunnel, ulnar nerve entrapment, left shoulder injury, migraine headaches, leg pain and weakness, anxiety and depression.

## Medical History

On August 8, 2008, Plaintiff was seen by Dr. R. Eilers and complained of pain and numbness in his back and legs.  (R. at 474).  Dr. Eilers listed his impressions as:

1.      Severe lumbar degenerative disk disease…
2.      Significant myofascial pain syndrome involving the lumbosacral paraspinals and piriformis resulting in continued pain.

*Id.*

At the request of the Agency, Plaintiff saw Dr. A. Taiwo for a consultative examination on March 23, 2013.  During the examination, Plaintiff was unable to get on the exam table because of pain, so he was examined in a chair sitting.  The range of motion in his elbows, wrist, knees, ankles, and cervical spine was not limited.  Dr. Taiwo was unable to evaluate range of motion in the lumbar spine and hips because the Plaintiff was in severe pain.

On January 22, 2014, Plaintiff was seen by Ruth Smith, complaining of chronic pain in his back, arms and legs as well as feeling depressed.  The physical exam reported neck and lumbar spine tenderness, decreased range of motion in his neck, lumbar spine, upper and lower extremities, and pain with straight leg raising.

Plaintiff began seeing a pain doctor, Dr. Ronald Kloc.  At this point in time the Plaintiff used a cane or wheelchair and had pain when sitting, standing, walking or laying down. Dr. Kloc ordered MRIs, his impression included "chronic low back pain, also some chest pains and intermittent discomfort which he has had for several years."  He also stated "there seems to be more going on than just chronic pain and this could [sic] very likely have his pain coming from psychiatry origin."  On January 28, 2014, Plaintiff's MRI showed an unremarkable lumbar spine and thoracic spine, minimal spurring at L4-5, a few small scattered osteophytes and no significant abnormalities in his left or right knee. (R. at 528-531).  On February 2, 2014, Dr, Kloc's findings of Petitioner's lumbar spine MRI included mild disc bulging, minimal canal narrowing, disc protrusion/herniation, scattered moderate degenerative facet arthropathy and hypertrophy and mild

neural foraminal stenosis. (R. at 551). He also made a finding Petitioner's MRI of his thoracic spine was unremarkable. (R. at 552). When Petitioner returned on February 7, 2014, Dr. Kloc said it was his belief that an annular tear at L4-5 and a small disc bulge right paramedian at L5-S1 could be "pain generators," told the Petitioner he considered him a fibromyalgia patient and he prescribed him Neurontin. (R. at 563). The next time Petitioner returned to Dr. Kloc, the doctor noted that the pain was better and he reiterated he believed much of Petitioner's pain was psychological and thought the Plaintiff's use of a walker was unnecessary. (R. at. 575).

Later in 2014, Plaintiff was seen by Dr. H. Gueorguiev reporting musculoskeletal pain, arthralgias, myalgais, and malaise/fatigue. He had pain and numbness in his lower extremities and his shoulders. The pain was worse when walking and standing and he could not sit in one place for more than five minutes because of discomfort. Dr. Gueorguiev diagnosed him with uncontrolled anxiety, chronic paretheisa, likely due to chronic spinal degenerative joint disease, and Fibromyalgia causing fatigue and chronic pain. (R. at 513-517).

Various non-examining medical consultants have also opined about the condition of the Plaintiff. In 2013, Dr. D. Mack opined that Plaintiff could stand and/or walk two hours and sit for six hours over the span of an eight-hour workday. (R. at 75; 88). He also stated that he could lift and/or carry twenty pounds occasionally, and ten pounds frequently. (R. at 75; 88). Later in 2013 another doctor agreed with all the opinions made by Dr. Mack. (R. at 104-05; 120-24). Furthermore, two non-examining state agency psychological consultants opined that the Plaintiff did not have a medically determinable mental impairment. (R. at. 73; 86; 102; 118).

## Hearing

The ALJ granted Plaintiff's request to amend his alleged onset date from February 8, 2008, to May 21, 2009. (R. at 15.) At the hearing, the Plaintiff used a walker and said he previously used a cane because he was having difficulty walking and standing without falling. (R. 46). He testified

that his last job required him to spend most of the day on his feet and was required to lift heavy panels that he approximated to weigh between 100-150 pounds. (R. 35). Plaintiff's attorney told the ALJ that during the two years after the incident, the Plaintiff attempted to continue working but was sent home after approximately two hours. (R. at 36).

After discussing the various jobs that Plaintiff has held, he testified that he cannot work anymore because "the only kind of job I've ever been able to do is hard labor jobs. I am not exactly educational smart, I'm not good with computers, I can't even do a text… It's hard for me to comprehend when I do read." (R. at 45). The Plaintiff described his typical day in the following manner. His wife helps him get dressed and prepares his breakfast. (R. at 48). He spends his day going between lying in bed and sitting on the couch, generally very restless. (R at 48 and 53). He is unable to complete any household chores and cannot use a computer. (R. at 49). The Plaintiff stated he is unable to participate in hobbies he used to enjoy doing such as working on cars, woodworking and "metal working." (R. 49). The Plaintiff testified that he has tried different painkillers but has suffered from side effects including falling sleeping and his skin crawling. (R. at 53-54).

The ALJ mentioned the "disconnect" present by the fact the Plaintiff had not been seen by a doctor for an extended period of time until he saw the doctor for his consultative examination. (R. 56). Plaintiff testified that he had been to St. Margaret's/Spring Valley. (R. at 56). He attested to the fact that he did not have health insurance during that period. *Id.* Plaintiff stated that he started seeing a doctor this year once he started receiving Medicaid. (R. at 57-58).

The vocational expert, Edward Steffan, testified as to the various jobs that Plaintiff had held. (R. at 61). He characterized the Plaintiff's previous work as follows:

> Tractor trailer driver described as medium
> Fork life driver described as light
> Material handler described as heavy
> Washer described as very heavy

5

Fabricator assembler described as medium
Packager described as medium

(R. at 61-63).


ALJ Decision[2]

The ALJ made the following findings:

1. The claimant meets the insured status requirements…
2. The claimant has not engaged in substantial gainful since May 21, 2009, the alleged onset date.
3. The claimant has the following severe impairment: degenerative changes to the lumbar spine.
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…
5. After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform the full range of medium work…
6. The claimant is capable of performing past relevant work as a fabricator and assemble, truck driver, washer and hand packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
7. The claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2009, through the date of this decision…

## STANDARD OF REVIEW

The Court begins its review of the ALJ's determination with the applicable legal standard.

To be eligible for Supplemental Security Income and/or Disability Insurance Benefits, a claimant

must show his or her inability to work is medical in nature and that he or she is totally disabled.

In order to establish a disability under the Social Security Act, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

Establishing a disability under the Act is a five-step, sequential process. The inquiry ends if, at

any given step, the Commissioner[3] affirmatively finds that the claimant is disabled or not disabled.

---

[2] R. at 15-23.
[3] Generally, by way of an ALJ.

Should the ALJ not make that determination, he or she must proceed to the next step. *See* 20

C.F.R. § 416.920(a)(4). In the following order, the ALJ must evaluate whether the claimant:

> 1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

> 2) suffers from an impairment which is severe and "meets the duration requirement in § 416.909" or whether a combination of impairments is severe "and meets the duration requirement";

> 3) suffers from an impairment which meets or equals any impairment listed in appendix[4] 1 to subpart P of part 404 and which meets the duration requirement;

> 4) is unable to perform past relevant work; and

> 5) is able to make an adjustment to other work based on the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience.

20 C.F.R. § 416.920(a)(4)(i)-(v).

This Court's review is governed by 42 U.S.C. § 405(g), which provides that "the findings

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive." "Substantial evidence is 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although less than a preponderance,

substantial evidence is more than a "mere scintilla" of evidence; it is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401;

*see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995); *Powers v. Apfel*, 207 F.3d 431, 434 (7th

Cir. 2000).

A Court will "review the ALJ's decision deferentially." *Overman v. Astrue*, F.3d 456, 462

(7th Cir. 2008). "'Although this standard is generous, it is not entirely uncritical.' And the case

---

[4] Should the claimant not qualify under one of Step Three's listed impairments, the ALJ then proceeds to Step Four to determine the claimant's Residual Functional Capacity ("RFC"). Pursuant to the claimant's RFC, the ALJ determines under Steps Four and Five whether the claimant is capable of performing past work or other work available in the national economy. 20 C.F.R. § 404.1520(e)-(g).

must be remanded if the decision lacks evidentiary support." *Id*. (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). The Commissioner, acting through the ALJ, "is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his [or her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872(7th Cir. 2000)). It is this Court's role to view the record as a whole, but it may not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ must articulate some minimal basis for the conclusions that he or she reaches so the reviewing court may "trace the path" of the ALJ's reasoning. *Willis v. Apfel*, 116 F. Supp. 2d 971, 974 (N.D. Ill. 2000) (quoting *Diaz*, 55 F.3d at 307); *see also Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). If substantial evidence supports the ALJ's decision, it shall be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

## DISCUSSION

The Court finds that the ALJ must reconsider his determination the that Plaintiff is able to perform a full range of medium work. The ALJ reached the decision that Plaintiff was not credible because he did not seek medical treatment for an extended period of time and the objective evidence did not support Plaintiff's subjective statements. (R. 21). An inability to afford treatment is one reason that can "provide insight into the individual's credibility." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Nonetheless, "the ALJ "must not draw any inferences" about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Id.* The adjudication of credibility must contain detailed reasons for the credibility determination. *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007). The decision must be "supported by the evidence and must be specific enough to enable the claimant and a

reviewing body to understand the reasoning." *Id.* As was determined by the Seventh Circuit an "ALJ's flawed credibility assessment cannot be brushed aside merely as harmless. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains in his decision how he would have reached the same conclusion even if he had found the claimant credible." *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011). The ALJ erred in his credibility finding because his conclusion that the Plaintiff did not seek treatment could not be supported by substantial evidence because there was evidence to the contrary.

The ALJ stated "there is no evidence during this period [from 2008-2013] indicating that the claimant made any effort to avail himself to low or no cost treatment." (R. at 21). However, this statement is not correct as there is evidence in the record that the Plaintiff attended the Bureau Country Health and Wellness Center between 2010 and 2012. (R. at 377). In this instance, the ALJ does not discuss evidence of his treatment at the wellness center or why he did not consider those visits when making his conclusions. The Court find the ALJ erred in not considering this evidence because he based the majority of his credibility determination on the fact that Plaintiff did not see medical assistance. The Seventh Circuit has held "[i]t is absolutely essential for meaningful appellate review" for the ALJ to expressly articulate his reasons "for crediting or rejecting particular sources of evidence." *Zblewski v. Schweiker,* 732 F.2d 75 (7th Cir. 1984). As such, the ALJ must articulate why he chose not to consider this evidence in his credibility determination.

In addition to claiming there is no evidence of low or no cost treatment, the ALJ concluded Plaintiff's assertions he could not afford treatment are "impugned by the fact that he remained eminently capable of finding the funds necessary for one or two packs of cigarettes per day." (R. at 21). The Seventh Circuit has taken issue with previous ALJs who make a negative credibility determination by "simply by noting [a plaintiff's] ability to buy cigarettes during that time -even

though the record contains no information about either the price of [plaintiff's health needs] or the cost of her cigarette habit." *Eskew*, 462 F. Appx at 616. If the ALJ is to consider the cost spent on cigarettes, he must ascertain the cost of treatment and the cost of cigarettes, to then determine if the money saved from not smoking would cover the amount required for treatment. *See Eskew,* 462 Fed. Appx. at 616; *Cieszynski v. Colvin*, No. 13-2103, 2014 WL 3843220, at *3 (C.D. Ill. Aug. 5, 2014). The Court finds that the ALJ's conclusion was not supported by substantial evidence and he must support his conclusion with the mathematical analysis.

The ALJ found "with the benefit of appropriate treatment, the claimant would have been capable of performing a full range of medium work." (R. at 22). The ALJ did not support his statement with any medical evidence of recommended treatment that the Plaintiff was not completing or had been recommended. The ALJ is not allowed to make his own independent medical determinations. *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir. 1985). The ALJ's statement is similar to another made by an ALJ that was classified as an assessment that was the "result of a hunch" and the Court has found that the ALJ may not make conclusions based on a hunch. *Wilder v. Chater,* 64 F.3d 335, 338 (7th Cir.1995) (a claimant is entitled to a decision based on the record rather than on a hunch); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Additionally, the ALJ found there was evidence of "exceedingly conservative treatment." (R. at 22.) Numerous district courts have found while the ALJ 'may consider conservative treatment in assessing the severity of a condition,' he should cite medical evidence about what kind of treatment would be appropriate." *Hollihan v. Colvin*, No. 2:14-CV-474-PRC, 2016 WL 750670, at *5 (N.D. Ind. Feb. 26, 2016) citing *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004); *Jones v. Colvin*, No. 12 C 6151, 2015 WL 7568366, at *1 (N.D. Ill. Nov. 25, 2015). However, the ALJ did not indicate a more reasonable alternative that was supported by

evidence in the record. The Court finds that both of these instances are examples of the ALJ making medical determinations not supported by medical evidence.

Furthermore, Plaintiff argues that the ALJ erred by finding no medically determinable mental impairment. (ECF No. 12 at 11). The ALJ determined because of the "absence of any such diagnosis, let alone evidence of pursuit of treatment," he could not find that the allegations of depression and anxiety, constitute a medically determinable impairment. (R. at 19). The ALJ includes a quote from Plaintiff's 2013, medical consultative examination finding Plaintiff's "[a]ppearance, behavior and ability to relate during the examination were normal." (R. at 18). The ALJ also notes that in 2014, Dr. Gueorguev included in his objective findings, "His mood appears anxious. His affect is blunt." (R. at 516). However, the ALJ did not discuss that further along in the report under the heading "Assessment and Plan: Diagnoses and associated orders for this visit" the doctor stated Plaintiff has "Anxiety-uncontrolled, may need to see a psychiatrist, I am not sure the underlying problem." (R. at 518). Later in 2014, when the Plaintiff saw Dr. Ronald Kloc, there was further indication of mental impairment when he stated in his plan "there seems to be more going on than just chronic pain and this [could] very likely have his pain coming from psychiatry origin." (R. at 539). The ALJ mentioned this notation when considering the Plaintiff's back pain but did not consider it when making his finding on Plaintiff's mental impairment. (R. at 18 and 22). This is again a critical part of the evidence that the ALJ did not account for in his determination and did not explain why he did not consider it in his deliberations. *Zblewski,* 732 F.2d at 75.

As mentioned above, the ALJ also mentioned that the Plaintiff did not receive treatment for depression or anxiety. (R. at 19). There was not a referral by Dr. Kloc, the pain specialist after his notation of anxiety. While the lack of a referral could mean that Plaintiff's anxiety was not severe, it could also mean that Dr. Kloc was not paying close attention to Plaintiff's anxiety. As

the Seventh Circuit has found, "there is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression. He is not looking for it, and may not even be competent to diagnose it." *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). Moreover, the Seventh Circuit has recognized that depression is a "notoriously underreported disease" and therefore, it may be disabling even when a claimant has not been treated by a mental health professional. *Id.*

The Court finds that the ALJ did err in making the determination that the Plaintiff's had no medically determinable mental impairment. The ALJ's decision was not supported by substantial evidence because it did not consider the diagnoses by Dr. Kloc and put too much focus on the Plaintiff's lack of treatment.

IT IS THEREFORE ORDERED THAT:

(1) The plaintiff's Motion for Summary Judgment (# 11) is GRANTED.

(2) The defendant's Motion for Summary Judgment (# 15) is DENIED.

(3) This case is remanded for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

(4) This case is terminated.

ENTERED this 3rd day of August 2018.

/s/ Michael M. Mihm

Michael M. Mihm

U.S. District Court Judge
